

IN THE UNITES STATES DISTRICT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

JURISDICTION

| | |
|---|---|
| HELEN ALLEN,<br><br>Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY,<br><br>Defendant | Case No.: 1:21-cv-00962<br><br>COMPLAINTS FOR VIOLATION OF CIVIL RIGHTS AND STATE SUPPLEMENTAL CLAIMS<br><br>JURY DEMANDED |

FIRST AMENDED COMPLAINT

JURISDICTION AND VENUE

1. This is an action to the United States Constitution, Title VII Civil Right Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended, and 42 U.S.C. §§ 1981 et seq., as amended. This court has jurisdiction under and by virtue of 28 U.S.C. §§1331, 1343, and 1367.

2. Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. §1391 (b) as the unlawful employment practices stated herein were, in whole

or in part, committed within the Northern District of Illinois. Venue further lies within this judicial district under 28 U.S.C. §1391 (c), since Defendant Ford Motor Company does business in this judicial district at least by operating plants in Illinois.

## PARTIES

3. At all times herein mentioned, Plaintiff, Helen Allen (hereinafter "Plaintiff"), was employed by Defendant Ford Motor Company (hereinafter "Ford").

4. At all times herein mentioned, Defendant, Ford, was and is believed and alleged hereon to be a corporation operating within the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

5. Plaintiff was employed by Ford Motor Company from 2000 through her forced medical retirement in 2020.

6. From 2012 until 2016 until her transfer to Sharonville Transmission Plant in Sharonville Ohio, in August 2016. Plaintiff was employed at Ford Motor Company Chicago Assembly Plant.

7. Plaintiff voluntarily accepted a transfer back to her original Plant she was first hired into.

8. Plaintiff was denied the opportunity to work once she relocated, because of her 2014 work related injury and Workers Compensation Claim

9. Plaintiff is an African American female.

10. Ford is a recidivist offender that willfully ignored the issues and evidence raised in prior litigation and EEOC findings and has failed to take measures to eradicate known discrimination and harassment from the workplace.

11. Ford knowingly allowed acts of sexual, racial and retaliatory harassment to occur toward Plaintiff Allen.

12. Ford engaged in a pattern and practice of discrimination, harassment, retaliation towards Plaintiff including, but not limited to:

   A. Profanity

   B. Unwelcome and unwanted touching and groping.

   C. Request for sexual favors.

   D. Unwanted and unwelcome sexual advances.

   E. Being subjected to jeers, lewd comments, sexual suggestions, catcalls and the like:

   F. Being stared at by male employees who were focused on certain parts of Plaintiff's body.

   G. Being subjected to comments or offers of sexual contact, males making offensive comments stating what they could or would like to do to Plaintiff or other women.

   H. Being subjected to men exposing their genitals and/or showing pictures of their genitals.

   I. Graffiti in the workplace.

   J. By being ridiculed for having complained and/or being admonished not to complain in the future.

   K. Being referred to as a "snitch bitch", "Bin Ladens wife", and "hoe".

      L. In many instances, this harassment occurs in the presence of Ford's supervisors and Ford would take no disciplinary actions, or insufficient action, against employees who engage in such sexually offensive conduct.

      M. Ford's male supervisors routinely assigned tasks to employees on a discriminatory basis by assigning better task to those female employees who submit to their sexual advances or who agree to go out with them.

13. Male employees routinely make discriminatory and harassing remarks or gestures in front of supervisors and managers who take no action to discipline employees, to eradicate the harassment or maintain an appropriate environment.

14. Defendant maintained a pattern and practice of inferior treatment of females, including Plaintiff, with respect to the terms and conditions of employment, including job assignments, harassing, training, promotions and overtime assignments.

15. Ford was aware of the ongoing discrimination and harassment perpetrated against Plaintiff that occurred daily in an open manner, such that it was observed by employees and supervisors, and Ford turned a blind eye toward it.

16. Ford agrees to a reconciliation agreement for $10.1 million for Sex Harassment and Race Discrimination complaints with EEOC for Chicago Assembly and Chicago Stamping employee's August 2017. Ford chose to voluntarily resolve this issue without any admission of liability with the EEOC to avoid and extended dispute, "Ford spokesman Kelli Felker said.

      a. Plaintiff was denied compensation from the reconciliation agreement that was created from Plaintiffs initial charges.

17. Senate Resolution 1076:

      a. March 5, 2018, Senate Task Force on Sexual Discrimination and Harassment Awareness and Prevention adopted, Senate Resolution 1076, as a result of

Plaintiffs testimony on the mistreatments done to her at Chicago Assembly Plant.

## COUNT 1

### TITLE VII-SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

18. Plaintiff re-alleges and incorporates paragraphs one (1) through sixteen (16) as though fully set at this place.

19. Plaintiff adopts and incorporates by reference her allegations of sexual harassment and of a hostile work environment alleged in her EEOC charges.

20. Plaintiff has been subjected to sexual harassment including but not limited to the following ways:

   a. Unwanted or unwelcome sexual advances
   b. Unwelcome or unwanted touching
   c. Request for sexual favors
   d. Stories of sexual conquest, desires, and escapades.
   e. Comments about female anatomy,
   f. Comments about what a male "would like to do" to or with a female sexually.
   g. Comments of a sexually suggestive nature.
   h. Name calling using names demeaning towards women such as "bitch", "slut" or "whore" or "hoe".
   i. Pictures of genitalia and/or of a sexual nature.
   j. Lurid, foul and offensive language and:

k. Other conduct of a sexually inappropriate nature for the workplace.

21. Superintendent Mike Polk repeatedly told sex jokes in plaintiffs' presence and bragged about his genitalia being larger than his counterpart.

22. Superintendent Fred Jones encouraged Skilled Tradesmen to engage in sexual conversations in plaintiffs' presence.

23. In addition to being sexually harassed Plaintiff was subjected to a hostile environment in that she was forced to endure hostile conditions in which she and other women were harassed. This hostile working environment included but was not limited to the following instances.

   a. Having sex in the workplace, the parking lot, and other areas of the workplace:
   b. Talking about sexual escapades which took place both in and outside of the workplace:
   c. Making unwelcome request for sexual favors and grotesque sexual acts:
   d. Showing pictures of genitalia:
   e. Commenting about women's vaginas and breast in degrading and sexual way:
   f. Commenting about the desire to perform sex acts on Plaintiff and other women coworkers:
   g. Jeering, making lewd comments, sexual suggestions and catcalls:
   h. Referring to new female employees as "fresh meat".
   i. Constantly staring at women's breast and buttocks:
   j. Offering better job assignments, better overtime opportunities, and better opportunities for promotions to female employees who submitted to their sexual advances:
   k. Demoting and/or assigning Plaintiff and similarly female employees to less desirable job opportunities when they rejected male supervisors' request:

24. In addition, Plaintiff repeatedly complained about sexual harassment during the relevant Time Period by calling Ford's harassment hotline and making numerous reports to Ford's Labor Relations Representative Natalie Dahringer and Labor Relations Superintendent Flouretta Drummer and/or Human resources department Superintendent Anthony Dodson and Plant Manager Brent Merritt.

25. Plaintiff complained outside the facility to Corporate Labor Affairs Manager, Jim Larese and Vice President of Labor Affairs, Stacy Allerton and the Defendant to take prompt remedial action.

26. As a direct and proximate results of the foregoing acts of sexual harassment, Plaintiff suffered damages, including lost time from work, anxiety, humiliation and emotional distress, and have suffered physical and psychological injuries.

COUNT 2

TITLE VII GENDER/SEX DISCRIMINATION

27. Plaintiffs re alleges and incorporates paragraphs one (1) through twenty-three (23) as though fully set forth at this place.

28. Plaintiff was treated differently than her male counterparts.

29. Plaintiff was subjected to a hostile working environment, sexual harassment, gender discrimination and discriminatory comments from supervisors and coworkers which males are not required to endure as a condition of employment.

30. Plaintiff was given different assignments than male counterparts and her and other women was told that they were not being assigned to perform certain task "because they are women".

31. Plaintiff was subjected to comments of a derogatory nature, including but not limited to being regularly referred to as a "snitch bitch", "hoe", and "slut".

32. Women in general are not viewed as equals at Defendant but rather as sexual objects.
33. Being constantly exposed to unwanted sexual comments and discussions is offensive and degrading to Plaintiff:
34. Plaintiff was treated differently than similarly situated male employees as they were not required to endure sexual harassment as a term and condition of their employment.
35. Plaintiff made complaints to Defendant about being exposed to a discriminatory, sexually harassing and hostile work environment.
36. Defendant failed to promptly discipline or reassign any males whom Plaintiff complained about and did not conduct a thorough or timely investigation of Plaintiff's complaints.
37. As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

COUNT 3

RACE DISCRIMINATION UNDER 1981

38. Plaintiff re-alleges and incorporate paragraphs one (1) through thirty-six (36) as though fully set at this place.
39. Plaintiff is an African American female.
40. Defendant's treatment of the Plaintiff denied her the full and equal treatment of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

41. Plaintiff as an African American was subjected to a racially hostile workplace environment that provided similarly situated white employees more favorable terms and conditions of employment.
42. White employees were given preference in promotions, especially at Ford Chicago Assembly Plant.

For example:

    a. Hourly workers in Ford's Chicago Assembly Plant are subject to the instructions of salaried Supervisors or Managers of various titles.
    b. Ford promotes some hourly employees into lower-level manager rules, carrying titles of "Team Leader".
    c. Reassignment to the positions of Team Leaders is considered promotions and are accompanied with increased levels of managerial responsibilities and wage increases and/or increased overtime opportunities.
    d. Between 2012 and 2016, Ford was short Team Leaders in Chicago Assembly Plant Skilled Trades.
    e. Ford promoted white co-workers.
    f. In 2015, Plaintiff applied for a promotion to become a Safety Representative.
    g. Plaintiff was told she "did not have knowledge" and was not even interviewed for the position, however a white employee with less seniority and experience at Ford was promoted to the Safety Representative position.

43. From 2012 through 2016, Plaintiff tolerated a racially discriminatory workplace environment in which symbols of racism were permitted to be posted and to remain in plain sight of African American employees, such as:

    a. Racial and homographic graffiti in plain view of Plaintiff.

      b. Constant reminders of racism had been painted in the restrooms and Plaintiff had been forced to endure these reminders. By way of example, these statements included "Niggers go home or die". Despite numerous complaints, Defendant permitted this statement to remain posted in the restroom for a substantial period of time.

44. Racial (and sexist) epithets have been yelled by white employees towards black employees at the Chicago Assembly Plant.

45. As a result of foregoing intentional conduct, Plaintiff has been denied equal rights and have been denied equal enjoyment of the benefits, privileges, terms and conditions of employment as white employees.

46. As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

## COUNT 4

## TITLE VII RETALIATION

47. Plaintiff re-alleges and incorporates paragraphs one (1) through forty-five (45) as though fully set forth at this place.

48. Plaintiff adopts and incorporates by reference her allegations of retaliation alleged in her EEOC charges.

49. Plaintiff was retaliated against for making formal complaints about Supervisors sexual advances, comments, innuendo, and lurid foul and offensive language.

50. As a result of Plaintiff's complaints of sexual harassment and discrimination, supervisors went out of their way to make Plaintiff's job more difficult and took extra care to subject Plaintiff to increased scrutiny and/or discipline.

51. In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Defendant retaliated against Plaintiff and treated Plaintiff differently than others in the following ways:

    a. Repeatedly unfairly disciplining Plaintiff:

    b. After Plaintiff complained about being sexually harassed by Superintendent Mike Polk, Polk would assign her jobs that required two or more Plumbers to complete. She was given workloads impossible for one person to complete safely.

    c. After complaining about sex harassment from Fred Jones and Co workers plaintiff was subjected to more intense sexual harassment.

    d. Superintendent Rick Webber berated the Plaintiff in presence of male coworkers and assigned her to unsafe work conditions. When plaintiff reported his actions, his Supervisor, Body Shop Area Manager Anthony Williams also engaged in the harassment of the Plaintiff for adhering to safety practices as mandated.

    e. Plaintiff was assigned to work with men who were vivid and thorough when explaining their sexual conquest.

    f. Plaintiffs' complaints were disregarded since she worked in a male dominated trade. Plaintiff was expected to accept the vulgar and disrespectful conversations she had to endure daily.

52. Furthermore, Defendants retaliated against Plaintiff for her complaints of sexual harassment and discrimination and her EEOC charges, by offering Plaintiff a voluntary transfer to her home plant,

then denying her the opportunity to work with work related restrictions. Eventually forcing Plaintiff into a medical retirement, for work related PTSD, from Ford despite her twenty-year tenure with the company.

53. Defendant's retaliatory acts against Plaintiff constitute materially adverse employment actions.

54. Defendant's reason for Plaintiff's retirement was merely pretext for illegal retaliation.

55. There is a casual connection between Plaintiff's protected activity and Defendant's retaliatory actions.

56. Similarly situated employees who did not engage in protected activity were treated more favorable than Plaintiff.

57. Plaintiff was again retaliated against after her voluntary transfer to her home plant. Plaintiff filed a lawsuit against Ford Motor Company, Sharonville Transmission Plant in Ohio.    Helen Allen-Amos vs. Ford Motor Company, 1:19-cv-1012.

58. As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical and psychological injuries.

## COUNT 5

## BATTERY

59. Plaintiff re-alleges and incorporates paragraphs one (1) through fifty-seven (57) as though fully set forth at this place.

60. Plaintiff was subjected to a harmful or offensive touching, without her consent by one or more of Defendant's supervisors, managers and/or employees.

61. Defendants took no steps to prevent Plaintiff from suffering a battery.

62. The Supervisors. Managers, and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

63. As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

## COUNT 6

## ASSAULT

64. Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-two (62) as though fully set forth at this place.

65. The foregoing acts by the Defendant were done intentionally.

66. These acts placed Plaintiff in fear or reasonable apprehensions of immediate battery or harmful or offensive touching.

67. Defendant took no steps to prevent Plaintiff from being assaulted.

68. As a direct and proximate results of the Defendant's conduct, the Plaintiff was damaged.

## COUNT 7

## INTENIONAL INFLICTION OF EMTIONAL DISTRESS

## (PRESERVED FOR APPEAL)

69. Plaintiff re-alleges and incorporates paragraphs one (1) through sixty-seven (67) as though fully set forth at this place,

70. Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

71. Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.
72. Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.
73. As a direct and proximate results of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the plaintiff and Plaintiff's similarly situated persons, respectfully request that this Court provide the following equitable and monetary relief:

A. That Plaintiff be granted punitive damages in an amount to be determined at trial.

B. That Plaintiff be granted special damages, including lost wages and benefits,

C. That Plaintiff be granted punitive damages in an amount to be determined at trial.

D. That the Court grant to Plaintiff his reasonable incurred attorneys' fees, cost, litigants' expenses, and pre-judgement interest: and post judgement interest.

E. That the Court grants such and further relief as the Court may deem just and equitable.

BY: s/ Helen Allen

Helen Allen

Pro Se Litigant

28 Township Rd 1370

Proctorville Ohio 45669

(513) 571-3634

wintresssssa@gmail.com

PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY

s/ Helen D. Allen

Pro Se Litigant

28 Township Rd 1370

Proctorville, Ohio 45669

(513) 571-3634

wintresssssa@gmail.com