IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| HELEN ALLEN, | Case No.: 1:21 cv 00962 |
| Plaintiff, | |
| vs. | HONORABLE JUDGE MARY ROWLAND |
| FORD MOTOR COMPANY, | HONORABLE JUDGE JEFFREY CUMMINGS |
| Defendant | |

## THIRD AMENDED COMPLAINT

HELEN ALLEN ("Plaintiff'") complains as follows against Defendant Ford Motor Company ("Defendant" or "Ford").

## JURISDICTION AND VENUE

1. Jurisdiction over the Plaintiff's federal law claims exists pursuant to 28 U.S.C. §1331 as these claims involve federal questions under Title VII (42 U.S.C. §2000e-5) and Section 1981 (42 U.S.C §§1981 and 1981(a).

2. Supplemental jurisdiction exists over the state law claims pursuant to 28 U.S.C.§ 1367 because the state law count is so related to the other claims in this action as to form part of the same case or controversy.

3. This court has jurisdiction over the Parties and the subject matter.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to the claims herein have occurred, in whole or in part, in this judicial district.

5. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant does business here by operating at least three (3) plants, including the Chicago Assembly Plant.

6. Plaintiff Allen is a legal adult at the time of the filing of this Third Amended Complaint, a resident of Ohio, at relevant times, Plaintiff has held the job classification of Skilled Trades Plumber / Pipefitter with Defendant.

7. Defendant Ford Motor Company operates at least two facilities in the Chicagoland area including the Chicago Assembly Plant at 12600 South Torrence Avenue in Chicago Illinois, and the Chicago Stamping Plant located at 1000 East Lincoln Highway in Chicago Heights, Illinois.

8. Plaintiff, as alleged herein, suffered a pattern of unlawful harassment and discrimination Like the other Plaintiff in *Van v, Ford Motor Company, 14 cv 08708 ("Van"),* of which Plaintiff was a co-plaintiff until her claims were severed leading to the instant case.
9. Plaintiff filed a charge of discrimination numbered 846-2013-24644, and subsequently amended that charge, a true and accurate copy of which is attached as Group exhibit one.
10. Plaintiff received a right to sue letter on October 7, 2014, a true and accurate copy which is attached as Group Exhibit 1.
11. Plaintiff has properly exhausted her administrative remedies as a matter of her charge and right to sue letter, and this case is properly before the Court.

<u>FORD IS A RECIDIVIST OFFENDER AS TO EEO LAWS</u>

12. Prior to the complaint files in *Van*, at least nine other people had to sue Ford for sexual harassment, sex discrimination, race discrimination, assault, and/or battery in *Rivera v. Ford Motor Company,* 95 cv 2990, a case filed in this judicial district.
13. Another 14 women filed suit against Ford in *Warner v Ford Motor Company,* 98 cv 1503, in this judicial district.
14. Ford was previously subjected to workplace monitoring by the EEOC and a reasonable cause determination that sexual harassment occurred and was occurring in its Chicago-area manufacturing facilities based upon allegations of supervisors making degrading references to women and female genitalia, touching, and groping of female workers, sexist graffiti, and the presence of pornographic material in the workplace.
15. Despite this prior track record, Ford continues to allow a sexually hostile work environment to persist in its Chicago-area plants, leading to *Van* and the instant lawsuit.

<u>COUNT 1 – GENDER DISCRIMINATION AND HOSTILE WORK ENVIRONMENT</u>

<u>SEXUAL HARASSMENT IN VIOLATION OF TITLE VII (FEMALE)</u>

16. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs through 15 of this Third Amended Complaint as if fully restated herein.
17. Plaintiff has suffered sexual harassment in at least the following ways, either personally and/or by working in an environment permeated by such actions of which she was aware:
    a. Unwanted and unwelcome sexual advances.

HONORABLE JUDGE MARY ROWLANDHONORABLE JUDGE JEFFREY CUMMINGS - 2

     b.    Unwelcome and unwanted touching.

     c.    Request for sexual favors.

     d.    Stories of sexual conquest, desires, or escapades:

     e.    Comments about the female anatomy:

     f.    Comments about individual women's' specific body parts:

     g.    Comments about what a male would like to do to a particular female sexually:

     h.    Comments of a sexually suggestive nature:

     i.    Name-calling to include but not limited to, comments directed to women such as "bitch." "Ho," "slut," "whore." "Dike," "good pussy," and other similarly degrading terms:

     j.    Graffiti and pornographic images:

     k.    Pictures of genitalia and/or of a sexual nature.

     l.    Lurid, foul, and offensive language: and,

     m.    Other conduct of a sexually inappropriate nature for the workplace.

18. Plaintiff additionally states that she was aware of sexual batteries and unwelcome unwanted touching occurring in the workplace, including but not limited to the following:

    a.    Supervisors propping, touching, caressing, hugging, and/or attempting to kiss women in the workplace:

    b.    Supervisors forcibly attempting sexual acts on women in the workplace:

    c.    Supervisors staring at female workers in the sexual ways and staring at female workers' breast and buttocks:

    d.    Supervisors intentionally pushing their genital areas up against female workers backsides in an effort at "dry humping:"

    e.    Supervisors belittling women by calling them names, referring to them as "fresh meat," and verbally treating women as sex objects.

19. Allen states that she was specifically subjected to the following actions:

    a.    Sexual stares:

    b.    Male co-workers discussing their penis sizes in her presence.

    c.    She personally witnessed male supervisors stand behind female co-workers and stare at their buttocks:

    d. Plaintiff overheard male supervisors brag about their sexual conquest with female employees.

    e. Plaintiff was personally subjected to, and observed other women being subjected to, sexual gawking by male supervisors in the plant that occurred all the time throughout the plant.

    f. Male co-workers anonymously left totems of banana's sticking up in the air and symbols depicting penises including in Plaintiff's work area.

    g. Plaintiff was aware of numerous offensive graffiti images of penises, and a degrading T-shirt referring to women as "Bitch Niggaz" and stating, "a Bitch will Fuck anybody for job security."

    h. Coby Millender, Mike Polk, Tony Amandillo, Dazman Gray, Fred Jones, Stan Penkala, and numerous other co-workers regularly made offensive, disgusting jokes of a sexual nature and regularly talked about female co-workers' "bid coochies," "fat asses," "titties," "pussies," and would brag to each other about their penis sizes.

    i. Plaintiff observed male co-workers viewing, buying, selling, and circulating pornography in the workplace.

    j. Plaintiff observed pornographic images in the maintenance locker area.

    k. Plaintiff was aware that supervisor that supervisor Myron Alexander collected and shared nude photographs of workers on his cell phone, and that when supervisor Dazman Gray became aware that Alexander was sharing sexy pictures of his wife, Gray became violent with Alexander, all of this had the effect pf terrifying Plaintiff.

    l. Plaintiff was aware that Kevin "Red" Marshall would walk through the plant and flirtatiously engage women in unwanted request for dates or romance.

    m. Plaintiff was aware that Red Marshall was revered by co-workers for his workplace sexual conquest.

    n. Plaintiff heard on numerous occasions co-workers talking about how big someone's "pussy" was and how they would like to "get in that ass" or words to that effect in reference to female co-workers.

    o. Plaintiff heard constant sex jokes daily from Superintendent Mike Polk, Fred Jones, Stan Penkala, and carpenter Tony Amadillo.

20. Plaintiff heard or heard of female supervisors being subjected to the same sexually degrading conduct as rank-and-file women, such as being touched, subjected to cat calls, referred to as a "ten." Enduring

comments such as "I want to fuck her," and men giving them elevator eyes and gawking at them and their body parts.

21. Plaintiff heard a female co-worker brag about performing sex acts with a supervisor to get better treatment and to become "untouchable."

22. Plaintiff was also aware of a male worker who received oral sex at the CAP facility in the Electrician's crib, and another who was caught engaging in sex acts in the paint building.

23. The sexual harassment and conduct of a sexual nature were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile work environment based upon her gender (female).

24. At the same time, the sexual harassment was so pervasive that some women would dress provocatively to gain favor with men and would sleep with supervisors to get more favorable jobs, assignments, and benefits, all which Plaintiff refused to do to her disadvantage.

25. Too, Plaintiff was aware of a female co-worker who would fondle men's genitals in the workplace, sit on their laps, squeeze men's buttock is and like physical actions to curry favor,

26. Women who engage in the foregoing actions received more favorable treatment than women who did not, including Plaintiff who refused to do so.

27. Plaintiff reported the foregoing and other acts of sexual harassment by calling the sexual harassment telephone hotline, making reports to labor relations, and / or reporting the conduct to her supervisors and to her union.

28. For example: Plaintiff discussed her specific sexual harassment, discrimination, and retaliation issues with her supervisors and Ford's Labor Relations staff, to include, but not limited to, Fred Jones, Natalie Dahringer, Flouretta Drummer, Aaron Wynn, Catina McCoy, Alex Qweeny Plant Manager Brent Merritt, and the hotline.

29. Fred Jones advised Plaintiff that he would not do anything to change sexually harassing and discriminatory work environment.

30. Plaintiff's complaints to the individuals went without changes to her working conditions, and the reporting process was futile and led to no changes.

31. Plaintiff also became aware that one of the union committeemen had been in a relationship with a supervisor at the plant, which undermined the union as a meaningful mechanism to challenge harassment and discrimination, even if such allegations were redressable by the union (which they were not redressable by the union, in any event.)
32. With respect to other complaints Plaintiff made, she would give statements to Labor Relations Representatives only to have nothing whatsoever to follow up on such complaint.
33. Other Labor Relations Representatives to whom Plaintiff treated her complaints with nonchalance and without seriousness, and none of these complaints ever led to any findings or changes.
34. Plaintiff also complained about race-based harassment, including on numerous occasions about supervisors referring to Plaintiff and other black women as "black bitch," "bitch," and "nigger."
35. After Plaintiff reported the activities, she experienced retaliatory actions, such as penises being drawn in employee break areas, totems in her work area resembling penises, and the circulation of a t-shirt containing retaliatory and degrading language about women who complain.
36. At no time did Ford take prompt remedial action to stop the discriminatory and harassing acts toward the plaintiff.
37. As a direct and proximate cause of the foregoing sexual harassment, Plaintiff has been damaged at least in that she has lost time from work, has suffered anxiety, depression, humiliation, psychological injury, and emotional distress.
38. Plaintiff's damages include psychological injury for which she has sought psychological treatment and therapy.
39. As a direct and proximate cause of the foregoing sexual harassment, Plaintiff has suffered sexual harassment within the meaning of Title VII.

WHEREFORE for the foregoing reasons, Plaintiff respectfully request that the court enter judgment in her favor, and against Defendant, and enter and order all available relief, including compensatory damages in an amount up to $300,000, lost pay and benefits, and injunctive and declaratory relief. Plaintiff additional request that this Court enter an award of reasonable attorney's fees and cost, and such other relief as the Court deems just and proper.

## COUNT 2-RETALIATION IN VIOLATION OF TITLE VII

40. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs One through forty-five of this Third Amended Complaint as if fully restated herein.

41. Plaintiff has engaged in numerous instances of Title VII protected activity, including reporting sexual harassment, discrimination, and retaliation to Ford via its sexual harassment hotline, to her supervisors, to her union, and to Labor Relation, as well as giving evidence in the *Van* proceedings and being a Plaintiff in that case.

42. Plaintiff has suffered retaliation in Violation of Title VII in at least the following ways:

    a. Supervisors have gone out of their way to make Plaintiff's job more difficult and subjected her to scrutiny over and above that given to employees who did not engage in protected activity.

    b. Labor Relation representatives disclosed Plaintiff's confidential complaints about harassment and discrimination to others in the plant with the goal of shaming Plaintiff and branding her as a snitch.

    c. Employee Coby Millender told approximately two hundred other employee's that Plaintiff was a complainer who had filed a sexual harassment lawsuit against Ford, which was an attitude fostered in Millender by virtue of his union office position and close working relationship with Ford's administration.

    d. Plaintiff was subjected to numerous acts of vandalism in her work area, including depiction of penises / phalluses and testicles, all meant to mock Plaintiff for her complaints.

    e. Jim Larese, corporate Labor Affairs manager, told staff and co-workers to "be careful around Helen because she is filing a lawsuit against Ford, "making them aware that Plaintiff had filed sexual harassment and discrimination charges internally and with the EEOC, resulting in a target being put on Plaintiff in the workplace as someone who complains and leading to retaliation.

    f. Plaintiff was repeatedly assigned to unfavorable work assignment to trip her up and lead to more discipline than others.

    g. Ford denied Plaintiff bathroom breaks allowed to employees who did not engage in protected activity.

    h. Ford suspended Plaintiff' subjected her to discipline and deprived her of pay based on frivolous allegation not charged against employees who did not engage in protected activity.

HONORABLE JUDGE MARY ROWLANDHONORABLE JUDGE JEFFREY CUMMINGS - 7

  i. Plaintiff was denied equal overtime opportunities as employees who did not engage in protected activity, leading to tangible losses in pay as a result.

  j. Plaintiff was advised by Area Manager Anthony Williams' Clerk that supervisors were "out to get" her because she is the complainer.

  k. Plaintiff had numerous union grievance that were held up far beyond contractual timelines.

  l. Plaintiff's breaks were interrupted by radio calls for her to go to work, which was not done to employees who did not complain.

  m. Plaintiff was labeled as a snitch by co=workers and management, to include Stan Penkala, Fred Jones, Mike Polk, Rick Webber, Desmond Gray, Coby Millender, Jeff Bacon, Aaron Stryker, Tony Tallarita, Natalie Dahringer, Herb Flores, Catina McCoy, Jim Larese and Flouretta Drummer among others, such that these individuals would give others the impression that Allen was troublesome and prone to filing complaints.

43. Like her sexual harassment complaints, Plaintiff also repeatedly reported retaliatory conduct to the harassment hotline and to Labor Relation and Labor Affairs but was met with the same inaction and nonchalance as occurred with her sexual harassment.

44. At no time did Ford take prompt remedial action to stop retaliatory acts towards the Plaintiff.

45. As a direct and proximate cause of the foregoing retaliation, Plaintiff has been damaged at least in that she has lost time from work, has suffered anxiety, depression, humiliation, psychological injury, and emotional stress.

46. Plaintiff's damages include psychological injury for which she has sought psychological treatment and therapy.

47. As a direct and proximate cause of the foregoing acts, Plaintiff has suffered retaliation within the meaning of Title VII.

  WHEREFORE, for the foregoing reason, Plaintiff respectfully request that this Court enter judgment in her favor, and against Defendant, and enter and order all available relief, including compensatory damages in an amount up to $500,000, lost pay and benefits, and injunctive and declaratory relief. Plaintiff additional request that this Court enter an award of reasonable attorneys' fees and cost, and such other relief as this Court deems just and proper.

COUNT 3 – RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMEN

RACIAL HARASSMENT IN VIOLATION OF TITLE VII (BLACK)

48. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraph One through fifty-two of this Third Amended Complaint as if fully restated herein.

49. Plaintiff is a member of a racial minority (African American).

50. During Plaintiff's tenure at Ford, she has been forced to work under supervisors who have been reported to be racist or have racist attitudes.

COUNT 3 RACE DISCRIMINATION AND HOSTILE WPRK ENVIRONMENT

RACIAL HARASSMENT IN VIOLATION OF TITLE VII (BLACK)

51. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs One through fifty-six of this Third Amended Complaint as if fully restated herein.

52. Plaintiff is a member of a racial minority (African American).

53. During Plaintiff's tenure at Ford Motor Company, she has been forced to work under supervisors who have not been reported to be racist or have racist attitudes.

54. Plaintiff has been forced to work in a racially hostile work environment that provided white employees more favorable treatment and terms and conditions of employment. For example:

    a. Plaintiff was repeatedly denied lunch breaks and overtime on equal basis to non-black workers.
    b. Plaintiff and other black females in and out of her presence were called "nigger."
    c. Plaintiff and other black females in and out of her presence were called "nigger" by white co-workers and supervisors on numerous occasions.
    d. Plaintiff and other black females have been referred to as "bitch niggaz."
    e. Similarly situated white co-workers were consistently given job assignment with better work tools.
    f. Plaintiff has suffered stereotypical comments about her hair, figure, person, headscarf, religious garb, and clothes from plant supervisors and co-workers.
    g. Plaintiff heard a supervisor call workers stupid motherfucker, playing into a stereotype that black people are uneducated and unintelligent.

      h. Plaintiff was subjected by co-workers on the floor to comments about her Islamic faith and that she is a black Muslim, to include that she is a scarf-wearing bitch and married to Osama Bin Laden.

      i. Plaintiff was written up for late attendance, but other employee, Kyna Holt, had her record cleared while Plaintiff did not because Kyna was light skinned and never complained.

55. Plaintiff reported such discriminatory conduct via hotline, Labor Relation, her union and to supervisors, without any changes, including to Thomas Hernandez, Kevin Seimers and other supervisors and superintendents.

56. As a result of the foregoing conduct, Plaintiff has been denied equal rights and equal enjoyment of the benefits, privileges, terms, and conditions of employment as white employees.

57. As a direct and proximate cause of the foregoing discrimination, Plaintiff has been damaged at least in that she has lost time from work, has suffered anxiety, depression, humiliation, psychological injury, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Court enter judgement in her favor, and against Defendant, and enter and order all available relief, including compensatory damages up to $500,000, lost pay and benefits, and injunctive and declaratory relief. Plaintiff additional request that this Court enter an award of reasonable attorneys' fees and cost and such other relief as this Court deems just and proper.

### COUNT 4 – RACE DISCRIMINATION UNDR 42 U.S.C § 1981

58. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs One through fifty-seven of this Third Amended Complaint as if fully restated herein.

59. This is a claim made under U.S.C. § 1981.

60. Plaintiff is a member of a racial minority (African American)

61. Defendant's treatment of Plaintiff has denied her full and equal benefits of all laws for the security of persons and property as is enjoyed by white citizens in violation of 42 U.S.C. § 1981.

62. Plaintiff has been forced to work in a racially hostile work environment that provided white employees more favorable treatment and terms and conditions of employment. For example:

    a. Plaintiff received less overtime than non-complaining white and black employees as a result of her complaints.

    b. Plaintiff and other black females have been repeatedly and frequently referred to as "black bitch," without it being redressed by management despite Plaintiff's complaints about it.

    c. Plaintiff was called "nigger" by white supervisors on numerous occasions.

    d. Plaintiff and other Black females have been referred to as "bitch niggaz."

    e. Similarly situated white co-workers were consistently given job assignment with better work tools and conditions, while Plaintiff is not given such work assignments.

    f. Plaintiff has suffered stereotypical comments about her hair, figure, person, and clothes from lant supervisors and co-workers.

63. The foregoing actions were taken against Plaintiff intentionally.

64. As a result of the foregoing conduct, Plaintiff has been denied equal rights and equal enjoyment of the benefits, privileges, terms, and conditions of employment as white employees.

65. As a direct and proximate cause of the forgoing discrimination, Plaintiff has been damaged at least in that she has lost time from work, has suffered anxiety, depression, humiliation, psychological injury, and emotion distress.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Court enter judgement in her favor, and against Defendant, and enter and order all available relief, including compensatory damages in an amount to be determined at trial, lost pay and benefits, and injunctive and declaratory relief. Plaintiff addition request that this Court enter an award of reasonable attorneys' fees and cost, and such relief as this Court deems just and proper.

<u>COUNT 5 – ASSAULT</u>

66. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs One through sixty-five of this Third Amended Complaint as if fully restated herein.

67. On numerous occasions during her employment, Defendant's employees placed Plaintiff in reasonable apprehension that she would suffer an immediate battery by repeatedly subjecting her to unwanted sexual comments such that Plaintiff was placed in fear that she would be groped and / or touched in unwelcome manner.

68. On numerous other occasions, Plaintiff was berated by supervisors Stan Penkala and Fred Jones and co-worker Monique Johnson, who have yelled at her in such a manner as to place her in imminent fear of an unwanted touching.

69. Defendant took no steps to prevent Plaintiff from being assaulted.

70. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages.

WHEREFORE< for the forgoing reasons, Plaintiff respectfully request that this Court enter judgement in her favor, and against Defendant, and enter and order all available relief, including compensatory damages up to $500,000, lost pay and benefit, and injunctive and declaratory relief. Plaintiff additional Court deems just and proper.

### COUNT 7 – INTENTIONAL INFLICTION OF EOTIONAL DISTRESS

71. Plaintiff adopts, realleges and incorporates by reference the allegations contained in Paragraphs One through seventy of this Third Amended Complaint as if fully restated herein.

72. Defendants, through its agents, supervisors, and employees, intended to cause Plaintiff severe emotional distress.

73. Defendant's conduct. Including that of opts its supervisors, was extreme, outrageous, and beyond all bounds of decency.

74. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully request that this Court enter judgement in her favor, and against Defendant, and enter and order all available relief, including compensatory damages up to $500,000, lost pay and benefits, and injunctive and declaratory relief, Plaintiff additional request that this Court enter an award of reasonable attorneys" fees and cost, and such other relief as this Court deems just and proper.

JURY DEMANDED ON ALL COUNTS

            Respectfully submitted

            HELEN ALLEN

October 28, 2022

HONORABLE JUDGE MARY ROWLANDHONORABLE JUDGE JEFFREY CUMMINGS - 12

| | |
|---|---|
| | /s/ Helen Allen |

HONORABLE JUDGE MARY ROWLANDHONORABLE JUDGE JEFFREY CUMMINGS - 13